(No. 35989.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK WILLIAMS, JR., Plaintiff in Error.

*Opinion filed May 27, 1963.—Rehearing denied September 26, 1963.*

EDWARD L. FOOTE, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and EDWARD J. HLADIS and RICHARD T. BUCK, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

The defendant, Frank Williams, Jr., was tried in the criminal court of Cook County by the court without a jury and convicted of the crimes of murder and assault with intent to commit murder. He was sentenced to 20 years' imprisonment on the murder charge and was given a one-to-

ten-year sentence on the assault charge, the sentences to run concurrently. We have issued a writ of error to review the judgments of conviction.

The defendant first contends that he was not tried within 4 months following his confinement on the two charges. However, it does not appear from either the common-law record or the bill of exceptions that this issue was ever presented to the trial court. This point is therefore not open to consideration. *People* v. *Brame*, 6 Ill.2d 412.

It is also contended that the evidence was insufficient to establish the defendant's guilt on either charge. The murder case was heard first and at its conclusion it was stipulated that the same evidence could be considered on the assault charge. The only eyewitness for the State on the murder charge was one Louise Stevenson. She testified that she saw the defendant walking behind the deceased and heard him call to the deceased to wait. She then heard a shot and saw the deceased grab his back and turn around and face the defendant. The deceased begged the defendant not to kill him and the witness then saw the defendant fire two more shots at the deceased. She then saw the defendant run across the street, get in a car and drive away.

Another witness, Lamar Little, testified that he had been with the defendant on the afternoon of the crime and that he and the defendant had been looking for an apartment. In the course of the afternoon the two men drank a pint of wine and some beer. Late in the afternoon the witness parked his car near the scene of the shooting and went into a tavern. The defendant left and the next time the witness saw him, the defendant was walking fast across the street toward the car. The defendant got in the car and drove around the corner where he met Little, who then drove the car. Little testified that the defendant told him, "I know I hit him the first time, but I didn't mean to hit him the second time." As Little was driving around, a car

pulled in front of him and a police officer got out, drew a gun, and approached Little's car. As he drew near, the defendant fired at him and then fled. On cross-examination it was brought out that the officer was not in uniform. Little testified that he never heard the officer identify himself as a police officer.

The police officer at whom the defendant fired testified that he had been assigned to investigate the shooting and had been given the license number of the car in which the defendant escaped. As the officer was driving near the scene of the crime in his private car he saw a car bearing that number and pulled out in front of the car. The officer got out of his car with his gun in his right hand and his police star in his left hand, and approached Little's car. When he got to about 14 inches from the right side of the car the defendant fired at him through the closed window.

It was stipulated that the corner's physician would testify that the deceased's death was caused by multiple extreme injuries following a gunshot wound of the abdomen.

The defendant testified that on the afternoon in questin he had had an argument with the deceased, who had attacked him with a tire iron. The defendant ran home and after he had eaten, left his home, armed with a gun. He testified that he didn't want to kill the deceased but that he was afraid of him. According to the defendant he saw the deceased on the opposite side of the street and went over to talk to him. The deceased asked the defendant if he was looking for him and the defendant said that he was not. The deceased told the defendant that he knew the defendant had gone home to get something to fight with and told the defendant that if he pulled something out he would break every bone in the defendant's body. The defendant testified that he asked the deceased to leave him alone but the deceased commenced walking toward him and he shot

the deceased because he was afraid. After he shot, the deceased begged him not to shoot any more and the defendant testified that he didn't remember shooting more than once. The defendant testified that when he was stopped by the police officer he didn't know the man was a policeman and thought he was one of the deceased's friends.

The defendant argues that this evidence fails to establish the element of malice and that therefore the shooting must be held to be justifiable on the ground of self-defense, or, at the most, manslaughter. This contention cannot be sustained. Mrs. Stevenson testified that the defendant shot the deceased in the back. The defendant characterizes Mrs. Stevenson's testimony as "inherently impossible". We do not find it so. The trial judge was not bound to believe the defendant's testimony that he shot the deceased as he was walking toward him. The judge apparently believed Mrs. Stevenson's testimony that the deceased was shot in the back and this testimony was sufficient to establish that the defendant was guilty of murder.

On the assault charge, involving the defendant's shooting at the officer, the defendant argues that the evidence fails to establish that the defendant knew that the officer was a policeman and argues that the evidence shows that the defendant fired in self-defense. This argument ignores the testimony of the officer that he had approached to within 14 inches of the car with his star held in his hand before the defendant fired. This evidence supports a finding that the defendant, who had only a short time before shot a man, fired at the officer with intent to kill him and make his escape.

The defendant also argues that the court should not have permitted Mrs. Stevenson to testify because her name was not endorsed on the indictment. The record shows that when the case was called for trial, defense counsel made a motion to obtain the names of all the witnesses. When Mrs. Stevenson's name was announced, counsel did not claim

surprise or raise any objection to her testifying. At no point during the trial did counsel advance the claim now made. This assignment of error will therefore not be considered on review. *People* v. *LaCoco*, 406 Ill. 303, 313.

Finally, the defendant contends that there was a material variance between the indictment and the proof. It is argued that Mrs. Stevenson's testimony that the deceased was shot in the back was at variance with the allegations of the indictment, which charged that the defendant shot the deceased "in and upon the chest, thorax, abdomen and body" of the deceased. The defendant urges that the indictment charges a face-to-face encounter with the deceased and is therefore inconsistent with testimony that the defendant shot the deceased in the back. The defendant's position is without merit. An indictment for murder by shooting is sufficient if it charges that the defendant unlawfully and with malice aforethought killed the victim by shooting (*People* v. *Moore,* 368 Ill. 455,) and it is not necessary to give a detailed description of the deceased's wounds (*People* v. *Pursley,* 302 Ill. 62, 69). The allegations of the indictment in the present case with respect to the deceased's wounds may be treated as surplusage and the remaining allegations are sufficient to charge the defendant with the crime of murder.

Our review of the record satisfies us that the defendant was proved guilty of both crimes beyond a reasonable doubt and that there was no prejudicial error at his trial. The judgments of the criminal court of Cook County are therefore affirmed.

*Judgments affirmed.*