THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, *v.* DANIEL WILLIAMS *et al.*, Petitioners-Appellants.

First District (1st Division)   Nos. 76-421 through 76-426 cons.

Opinion filed April 25, 1977.

James J. Doherty, Public Defender, of Chicago (Samuel Warshawsky and Donald Paull, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Timothy Quinn, and Mary C. Shropshire, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Petitioners each sought habeas corpus relief following their individual fitness hearings, which had concluded with each being found unfit to stand trial. The trial court denied habeas corpus and petitioners' appeals have been consolidated here.

Daniel Williams, No. 76-421, was indicted for murder and attempt murder. He was found incompetent to stand trial on June 21, 1968. On December 3, 1975, on petition filed by the State's Attorney of Cook County, a fitness hearing pursuant to section 5—2—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—2) was held. The evidence presented at the hearing was that Williams was unfit to stand trial because he did not understand the nature of the charges against him and also did not have the ability to cooperate with defense counsel. The evidence also indicated that Williams was in need of mental treatment under the standards set by the Mental Health Code (Ill. Rev. Stat. 1975, ch. 91½, par. 1—11) and that there was a substantial probability that he would never attain fitness to stand trial.

Frank Kulak, No. 76-422, was indicted on three counts of murder and two counts of aggravated battery. He was found incompetent to stand trial on February 27, 1970. At his fitness hearing on December 3, 1975, the evidence indicated that he understood the nature of the charges against him, but he could not cooperate with counsel for his defense; that he was in need of mental treatment under the civil code standard; and that he would not attain the state of mental fitness to stand trial in the forseeable future.

Joseph Dever, No. 76-423, was indicted for murder. On July 20, 1972, he was found incompetent to stand trial. At his fitness hearing, the evidence indicated that he understood the nature of the charge against him but could not cooperate with counsel for his defense; that he was in need of mental treatment under the civil code and that he "probably will never be fit to stand trial."

Francis Osewski, No. 76-424, was indicted for arson. On August 15, 1972, he was found incompetent to stand trial. At his fitness hearing, the evidence indicated that he could neither understand the nature of the charge against him nor cooperate with counsel for his defense; that he was still in need of mental treatment under the civil code; and that he would not attain substantial capacity to stand trial in the forseeable future.

Cornelius Parker, No. 76-425, was indicted for burglary. He was found incompetent to stand trial on November 5, 1970. At his fitness hearing, the evidence indicated that he was able to understand the nature of the charge against him, but was unable to cooperate with defense counsel; that he was in need of mental treatment under the civil code; and that he would not attain the state of mental fitness to stand trial in the forseeable future.

Manfred Sadowski, No. 76-426, was indicted for murder. On July 13, 1972, he was found incompetent to stand trial. At his fitness hearing, the evidence indicated that he was able to understand the nature of the charge against him, but was unable to cooperate with defense counsel; that he was in need of mental treatment under the civil code; and that he would not attain a state of mental fitness to stand trial in the forseeable future.

At the conclusion of the evidence in each case, the trial court directed a verdict of unfitness to stand trial. Counsel for the defendants then presented the court with petitions for habeas corpus for each defendant. Hearings on these petitions were consolidated and set for December 9, 1975. On that date, petitioners relied on the evidence presented at the respective fitness hearings, introduced no other evidence and argued the legal issues. The court denied the petitions at the conclusion of arguments and remanded petitioners to the Department of Mental Health to conduct a hearing to determine whether they were in need of mental treatment.

The issues presented as requiring reversal are that the court erred in not dismissing the indictments by means of the petitions for habeas corpus because (1) the statutory scheme in Illinois does not satisfy the "commit or release" rule of *Jackson v. Indiana* (1972), 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845, (2) the defendants are denied equal protection of the law in Cook County by the way in which the statutory scheme is applied, (3) the court has power to dismiss indictments under the circumstances of these cases when section 5—2—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—2) is read together with *Jackson v. Indiana,* and (4) the petitioners were denied their rights to "speedy trial" by the operation of section 5—2—2 under the facts presented.

The State has responded to these arguments, but has also filed a motion to dismiss the appeal on the grounds that petitioners' habeas corpus actions were in substance and effect motions to dismiss the indictments, and denials of motions to dismiss indictments are not final appealable orders. Petitioners noted that their sole reason for bringing habeas corpus proceedings was to accomplish dismissal of the indictments, but argue that it is by reason of the indictments that they are confined within the jurisdiction of the criminal court; if the indictments are dismissed, they may remain confined as committed civilly under the Mental Health Code but would not suffer certain alleged discriminatory disabilities in treatment which are the result of the jurisdiction of the criminal court over them.

■■ Therefore, the threshold question is whether this court has jurisdiction of the case on appeal. In *People v. Culhane* (1975), 34 Ill. App. 3d 158, 340 N.E.2d 63, the court dismissed an appeal for lack of jurisdiction where the defendant had appealed from the denial of his motion to dismiss the indictment. The court noted, however, that where circumstances of defendant's incompetency conflict with his assertion of constitutional rights, Illinois courts recognize the propriety of habeas corpus to review the case (34 Ill. App. 3d 158, 160). Habeas corpus may be the only means available to these petitioners to challenge the conditions of their confinement.

Petitioners have also alleged that their constitutional rights of equal protection of the laws and due process of law have been violated because

of the present statutory scheme. Disregarding the merits of these claims for the moment, since we are initially concerned with the appealability of the dismissals below, we conclude that the habeas corpus petitions were legally sufficient to be considered as such and not solely as motions to dismiss. While it is true that petitioners do not assert that they must be released from civil commitment under the Mental Health Code, but only argue that they must be released from the condition of their confinement directly attributable to the jurisdiction of the criminal court, we believe that this is a sufficient allegation of "confinement" for habeas corpus purposes. In *People ex rel. Chapman v. Brelje* (1974), 22 Ill. App. 3d 193, 317 N.E.2d 402, the court decided that the prisoner's petition for habeas corpus was entitled to a hearing where the relief requested was not absolute release from confinement, but release from the psychiatric division of the prison to the general prison population. Considering the claims of petitioners and the circumstances of their confinement, habeas corpus was an appropriate means of presenting their motions to dismiss the indictments against them, and accordingly the State's motion to dismiss the appeal is denied.

*Jackson v. Indiana* (1972), 406 U.S. 715, 738, 32 L. Ed. 2d 435, 451, 92 S. Ct. 1845, limited the ability of the State to hold an accused, who is found unfit to stand trial, in the penal or mental illness facilities of the State indefinitely:

> "We hold, consequently, that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. * * * "

The procedure established by the General Assembly of Illinois for proceeding in cases where the defendant is found unfit to stand trial is set forth in section 5—2—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par 1005—2—2):

> "(a) If the defendant is found unfit to stand trial or be sentenced, the court shall remand the defendant to a hospital, as defined by the Mental Health Code of 1967, and shall order that a hearing be conducted in accordance with the procedures, and within the time periods, specified in such Act. The disposition of defendant pursuant to such hearing, and the admission, detention, care, treatment and discharge of any such defendant found to be in need of mental treatment, shall be determined in accordance with such

Act. If the defendant is not ordered hospitalized in such hearing, the Department of Mental Health and Developmental Disabilities shall petition the trial court to release the defendant on bail or recognizance, under such conditions as the court finds appropriate, which may include, but need not be limited to requiring the defendant to submit to or to secure treatment for his mental condition.

(b) A defendant hospitalized under this Section shall be returned to the court not more than 90 days after the court's original finding of unfitness, and each 12 months thereafter. At such re-examination the court may proceed, find, and order as in the first instance under paragraph (a) of this Section. If the court finds that defendant continues to be unfit to stand trial or be sentenced but that he no longer requires hospitalization, the defendant shall be released under paragraph (a) of this Section on bail or recognizance. Either the State or the defendant may at any time petition the court for review of the defendant's fitness.

(c) A person found unfit under the provisions of this Article who is thereafter sentenced for the offense charged at the time of such finding, shall be credited with time during which he was confined in a public or private hospital after such a finding of unfitness. If a defendant has been confined in a public or private hospital after a finding of unfitness under Section 5—2—6 for a period equal to the maximum sentence of imprisonment that could be imposed under Article 8 for the offense or offenses charged, the court shall order the charge or charges dismissed on motion of the defendant, his guardian, or the Director of the Department of Mental Health and Developmental Disabilities.

(d) An order finding the defendant unfit is a final order for purposes of appeal by the State or by the defendant."

■■ Petitioners argue that the statute does not satisfy *Jackson's* "commit or release" mandate and cannot be read as the legislature's response to *Jackson* because it was passed by the legislature the day before the opinion in *Jackson* was released. However, the statute does appear to be addressed to the factual pattern presented in *Jackson*; it does provide that an accused be committed under the civil standard or be released by the criminal court on bail or recognizance; it does provide for periodic review of the accused's progress toward fitness and thus contemplates that no indefinite confinement will occur solely because an accused is found unfit for trial. We find the fact that the legislature passed the statute before *Jackson* was delivered to be irrelevant to the statute's constitutionality. The court in *People v. Byrnes* (1972), 7 Ill. App. 3d 735, 288 N.E.2d 690, though the constitutionality of section 5—2—2 was not in

issue before it, considered the statute to be a solution to the equal protection and due process problems of the statute's predecessor. We agree, and find that it is constitutional on its face, satisfying the requirements of *Jackson*.

Petitioners present two problems not addressed directly by the statute or the Supreme Court in *Jackson*: (1) does the defendant have a right to dismissal of the indictment against him if it does not appear that he will be fit to stand trial in the foreseeable future, and (2) if a defendant is charged in Illinois with murder or a Class 1 felony, neither of which has a maximum statutory term of imprisonment prescribed, can he be held indefinitely, possibly for the duration of his life, while awaiting fitness for trial?

■■ As to the first question, we agree with the reasoning and conclusion of the court in *People v. Byrnes* (1975), 34 Ill. App. 3d 983, 341 N.E.2d 729, that section 5—2—2 does not authorize a trial court to dismiss the charges against a defendant, found unfit to stand trial, who is charged with a Class 1 felony. By the same reasoning, neither does that section authorize dismissal when the charge is murder. While this court has recently held in *People v. Lawson* (1976), 38 Ill. App. 3d 239, 347 N.E.2d 430, *appeal allowed* (1976), 63 Ill. 2d 560, that a court may dismiss an indictment where pre-indictment delay has resulted in actual prejudice to a defendant's preparation of a defense, we believe that the decision should be limited to its factual context, which makes it inapplicable here, where no issue of pre-indictment delay is raised. Further, section 5—2—2(a) provides that a defendant who is not in need of mental treatment is to be released on bail or recognizance, and implicit in this prescription of bail or recognizance is the pendency of the indictment, otherwise there would be no need for bail or a recognizance bond to secure the return of the defendant should he be found fit to stand trial at a later date or demand trial as provided in *People ex rel. Myers v. Briggs* (1970), 46 Ill. 2d 281, 263 N.E.2d 109.

■■ As to the second question, if the procedures outlined in section 5—2—2 are followed, the defendant who is not in need of mental treatment cannot be held indefinitely, even though he may remain unfit to stand trial indefinitely. (*People ex rel. Martin v. Strayhorn* (1976), 62 Ill. 2d 296, 342 N.E.2d 5.) If an accused is committed and later found not in need of mental treatment, he is to be released. We find no patently unconstitutional denial of due process or equal protection in the operation of the statute.

However, petitioners challenge the law as applied, alleging that they are denied equal protection because they are treated differently when civilly committed from other patients because of the indictments pending against them. They further allege that, if found not in need of mental

treatment, they are denied equal protection and due process because the practice of the court, in Cook County at least, is to set a bail figure so high that it cannot be met.

■■ We do not address these issues because the record on appeal does not reveal whether petitioners were found by a court to be in need of mental treatment. Habeas corpus petitions were filed and hearings on these petitions were held immediately following the fitness hearings, and nothing in the record reveals whether petitioners were ever committed civilly. If they had been committed and proof of the alleged denials of equal protection were offered at the habeas corpus proceedings, the issue would be ripe for review. If petitioners had been found not in need of mental treatment and bail was set which could be argued to be unreasonable, procedures are available for their protection. But petitioners have not made their record on these issues in the trial court and we find no justiciable issue presented. (*Knuppel v. Adams* (1973), 12 Ill. App. 3d 708, 298 N.E.2d 767.) In so ruling, we disregard the exhibits attached to the petitions for habeas corpus because they are unauthenticated and hearsay and we decline to take judicial notice of an unrelated criminal proceeding transcript offered in this court in support of petitioners' bail argument.

Only petitioners Williams and Osewski made demands for trial below; therefore, the "speedy trial" issue is waived as to the other petitioners. Williams and Osewski in raising the issue present cases of conflict between two constitutional rights in the same individual. Each has a right to a speedy trial, guaranteed by the sixth and fourteenth amendments to the United States Constitution and section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 103—5). Each also has the right to not be tried if he is unable to understand the nature of the charge against him or is unable to cooperate with counsel in preparing a defense, guaranteed by *Pate v. Robinson* (1966), 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836, and section 5—2—1(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1(a)). The legislature has determined that the right to speedy trial is held in abeyance during the continuance of a defendant's condition of unfitness for trial. Sections 103—5(a) and 103—5(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, pars. 103—5(a), 103—5(b)) exempt from the period in which a defendant must be tried that delay occasioned by "an adjudication of incompetency for trial." Though the word "incompetence" is used, which was in harmony with the repealed section 104—1 *et seq.* of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1971, ch. 38, par. 104—1 *et seq.*), the present standard of "unfitness" must be equated with "incompetence" for the purposes of tolling the speedy trial term. Petitioners admit this in their briefs, but assert nevertheless that

*Jackson v. Indiana* requires the State to try them or dismiss the indictments.

■■ We do not believe that *Jackson* can be read as requiring a State to either try unfit defendants or dismiss the pending criminal charges against them. While it is true that the court indicated the desirability of determining the innocence of the accused in certain circumstances, citing with approval the opinion of our supreme court in *People ex rel. Myers v. Briggs* (1970), 46 Ill. 2d 281, 263 N.E.2d 109, the court neither ordered trial nor dismissed, but remanded *Jackson* to the Indiana courts for the initial determination of this issue.

Petitioners do not, and apparently cannot, argue that they should be tried on the authority of *Myers*. The court in *Myers* endorsed the procedure adopted by an English court in *Regina v. Roberts* (1953), 2 All E.R. 340, in which a mute defendant, who had a right not to be tried because of his mental and physical unfitness, was permitted to have a trial to show his innocence and was acquitted. In *Myers*, the court ordered that the accused be allowed a trial, which his attorney had demanded with full waiver of his right not to be tried because of his unfitness, where the accused was an illiterate deaf-mute and the trial court could "afford such a defendant reasonable facilities for confronting and cross-examining the witnesses as the circumstances will permit." (46 Ill. 2d 281, 287.) An unfit defendant, tried for the crime charged under such a procedure and found guilty, may not constitutionally be convicted or sentenced on that finding. (*People v. Lang* (1975), 26 Ill. App. 3d 648, 325 N.E.2d 305, *cert. denied*, 423 U.S. 1079, 47 L. Ed. 2d 90, 96 S. Ct. 851.) Petitioners cannot request a *Myers*-type trial because it has been determined in their fitness hearings that they cannot cooperate with counsel for their defense and thus it is impossible that a trial court could devise a procedure whereby their rights to confrontation and cross-examination could be effectively preserved.

In this regard, *People v. Lang* (1975), 26 Ill. App. 3d 648, 659, 325 N.E.2d 305, 312, and *People v. Byrnes* (1975), 34 Ill. App. 3d 983, 987, 341 N.E.2d 729, 732, refer to a study being made by the Governor's Commission for Review of the Mental Health Code of Illinois. That Commission, in 1976, issued its Report proposing legislative solutions to some, if not all, of the issues raised by petitioners, specifically, the setting of time limits for maintaining, as pending, criminal charges against those found unfit for trial, including those charged with murder and Class 1 felonies. The Report proposes a statutory discharge hearing at which the State may be compelled to prove the defendant guilty or the unfit defendant is entitled to discharge. The Report further proposes that in cases where a defendant will be rendered fit to stand trial through use of the special assistance of experts or translators, trial may proceed. We

commend this Report to the General Assembly as a basis for legislation to establish new procedures in cases of defendants found unfit for trial.

The denial in each case of the habeas corpus petition is, for the reasons stated above, affirmed and these causes are remanded to the trial court to proceed as directed in section 5—2—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—2).

Affirmed and remanded.

GOLDBERG, P. J., and BUA, J., concur.